SUPPLEMENTAL OPINION
{¶ 1} Appellant, Donna DeWitt, filed a timely appeal from a Belmont County Juvenile Court decision granting permanent custody of her two children, Randy and Alana, to appellee, the Belmont County Department of Job and Family Services. This court found that the trial court should conduct an independent investigation into whether the children were entitled to a court-appointed attorney to represent their interests. We reversed and remanded the trial court's decision for it to do so. In that appeal, appellant also raised another assignment of error stating:
 {¶ 2} "The trial court's decision to terminate parental rights was against the manifest weight of the evidence."
 {¶ 3} We found that this assignment of error was moot at that time and noted that after the trial court held a hearing determining whether the children were entitled to counsel, we would address appellant's second assignment of error upon her timely request.
 {¶ 4} The trial court has since conducted a hearing and ruled that appointed counsel for the children was not necessary. (Oct. 28, 2004 Judgment Entry.) Now appellant has timely requested that we examine the merits of her second assignment of error.
 {¶ 5} In her assignment of error, appellant contends the trial court's decision was against the manifest weight of the evidence. She notes that the court made a finding consistent with R.C. 2151.414(E)(1), which provides, in part:
 {¶ 6} "Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home."
 {¶ 7} Appellant argues that the complaint in this matter alleged that the children witnessed domestic violence and there was a lack of supervision in the home. She claims that since the evidence showed that she remedied these situations, the court's judgment was against the weight of the evidence. She cites to numerous transcript excerpts, which she opines support her position. She further contends that appellee should have incorporated Dale DeWitt, her then boyfriend and now husband, into the case plan and done more than simply tell her to stay away from Dale. She notes that until Randy made allegations of sexual abuse against Dale, appellee was planning to reunify her with the children. And appellant asserts that Randy's allegations were vague and inconsistent. Finally, she points out that Dale has never been prosecuted and he has custody of his own children.
 {¶ 8} A parent's right to raise his or her children is an essential and basic civil right. In re Murray (1990), 52 Ohio St.3d 155, 157,556 N.E.2d 1169, citing Stanley v. Illinois (1972), 405 U.S. 645, 651,92 S.Ct. 1208, 31 L.Ed.2d 551. However, this right is not absolute. In reSims, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, at ¶ 23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. Id.
 {¶ 9} We review a trial court's decision terminating parental rights and responsibilities for an abuse of discretion. Sims, 7th Dist. No. 02-JE-2, at ¶ 36. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 10} A court may grant permanent custody of a child to an agency if it finds by clear and convincing evidence that it is in the child's best interest to grant permanent custody to the agency and that any of the factors in R.C. 2151.414(B)(1) apply. R.C. 2151.414(B)(1). Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368,481 N.E.2d 613.
 {¶ 11} Pursuant to R.C. 2151.353(A)(4), a court may grant permanent custody of a child to a children services agency in certain circumstances, including:
 {¶ 12} "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 13} "* * *
 {¶ 14} "(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414
of the Revised Code that the permanent commitment is in the best interest of the child. If the court grants permanent custody under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding."
 {¶ 15} Thus, before it can grant permanent custody of a child to a children services agency, the court must evaluate the child's best interests using the factors set out in R.C. 2151.414(D) and determine whether the child cannot or should not be placed with either parent within a reasonable time using the factors set out in R.C. 2151.414(E).
 {¶ 16} Two of the R.C. 2151.414(E) factors potentially apply in this matter, R.C. 2151.414(E)(1), which appellant refers us to, and R.C. 2151.414(E)(11), which is, "[t]he parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or2151.415 of the Revised Code with respect to a sibling of the child." The trial court found R.C. 2151.414(E)(1) applied but did not address R.C. 2151.414(E)(11) in its judgment entry.
 {¶ 17} Appellant takes issue with the evidence supporting the court's R.C. 2151.414(E)(1) finding. However, we need not address that issue because a court may also grant permanent custody to a children services agency pursuant to R.C. 2151.414(B)(1), which provides:
 {¶ 18} "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 19} "* * *
 {¶ 20} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 21} "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."
 {¶ 22} The children were removed from their home on September 27, 2001. The court adjudicated them dependent on December 12, 2001. The children remained in appellee's temporary custody until the permanent custody hearing, which was not held until January 22, 2004. Thus, the children were in appellee's temporary custody for well over 12 months of a consecutive 22-month period.
 {¶ 23} Consequently, as long as competent, credible evidence exists on the record to prove that it is in the children's best interests that the court grant their permanent custody to appellee, we must affirm the trial court's judgment. Both R.C. 2151.353(A)(4) and R.C. 2151.414(B)(1) require the court to find that permanent custody to the agency would be in the child's best interest before granting the children's services agency permanent custody. R.C. 2151.414(D) provides factors the court is to consider in determining the child's best interest. They include, but are not limited to:
 {¶ 24} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 25} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 26} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 27} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 28} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D).
 {¶ 29} The evidence regarding the children's interrelationship with others was as follows. Lori Yuhase, an outpatient therapist at Community Mental Health Services who treats Randy, testified that Randy refers to his foster family as his family. (Tr. 15). She opined that this could be a sign that he has not fully bonded with appellant. (Tr. 15). Ms. Morrocco, the visitation coordinator, testified that the children are excited to see appellant at visits. (Tr. 124).
 {¶ 30} Neither child expressed their wishes, either directly or through their guardian ad litem (GAL).
 {¶ 31} The children's custodial history was outlined above. They have been in appellee's custody in foster care for over three years.
 {¶ 32} Andrea Booth, the family's caseworker, testified the children are adoptable. (Tr. 160). No other evidence was elicited as to the fourth factor.
 {¶ 33} As to the final factor, one of the factors in R.C. 2151.414(E)(7) to (11) applies to appellant. R.C. 2151.414(E)(11), which is whether the parent has had parental rights involuntarily terminated with respect to a sibling of the child, applies to appellant. Ms. Booth testified that in December 1996, appellee received permanent custody of appellant's daughter. (Tr. 141). She stated that case involved allegations that appellant's six-month-old daughter was sexually abused and that appellant denied the abuse. (Tr. 141). Appellant admitted that appellee took permanent custody of her two children in 1995. (Tr. 203). She testified that there were allegations that her daughter was sexually abused, but she was never told who the perpetrator was. (Tr. 203-204). The court also took judicial notice of the prior case. (Tr. 6-7).
 {¶ 34} In addition to these statutory factors, the evidence revealed the following relevant information.
 {¶ 35} Ms. Yuhase testified that Randy suffers from adjustment disorder and possibly attention deficit hyperactivity disorder and reactive attachment disorder. (Tr. 11, 13). She stated that reactive attachment disorder can occur when a child does not fully bond with his parents in the first two to three years of life. (Tr. 13). She also testified that Randy disclosed to her that Dale touched his privates when he visited at appellant's house. (Tr. 17). Ms. Yuhase recommended that the court not place Randy anywhere near Dale. (Tr. 21).
 {¶ 36} Elizabeth Goodwin, appellant's counselor at Tri-County Help Center, testified regarding appellant's counseling. She stated that she has been seeing appellant since September 2001, when appellant was living in a domestic violence shelter with the children. (Tr. 61). She stated that at that time, the shelter voiced concerns regarding appellant's temper with the children and her discipline of them. (Tr. 62-63). Currently, Ms. Goodwin stated that appellant is diagnosed with bipolar one disorder and parent-child relational and partner relational problems. (Tr. 63). She stated appellant takes several medications for her disorder. (Tr. 64). She testified appellant consistently keeps her appointments. (Tr. 76). And she opined that appellant really cares about the children and has been working hard to get them back. (Tr. 80).
 {¶ 37} However, Ms. Goodwin testified that she has discussed Randy's allegations of sexual abuse against Dale with appellant and that appellant does not believe Randy. (Tr. 69). She stated that given appellant's history with having another child taken away due to allegations of sexual abuse and appellant's disbelief of Randy's allegations, she had concerns about appellant's ability to protect her children. (Tr. 69-70). She also stated she was concerned by the fact that appellant married Dale after Randy made the allegations of abuse. (Tr. 71-72). Based on the above, Ms. Goodwin opined that the court should grant permanent custody to appellee. (Tr. 73-74).
 {¶ 38} The GAL testified next. He submitted a report on November 25, 2003, recommending the court place the children in appellee's permanent custody. He testified that he stood by his written report and believed that permanent custody to appellee was in the children's best interests. (Tr. 96). He opined that appellant would not be able to parent the children in the foreseeable future. (Tr. 96). In his report, the GAL noted appellant is working hard, has received counseling, and has completed parenting classes. But he expressed concerns about appellant previously having two children removed from her care. He further stated his focus was on the children and that they had special needs, which required parents who could put their own issues aside in order to care for them. He opined that appellant was not able to do this.
 {¶ 39} Ms. Morrocco testified next. She monitored many of the visits between appellant and the children. (Tr. 103). Ms. Morrocco testified that appellant attended 111 visits with the children with no cancellations. (Tr. 103). She opined that, in observing appellant with the children, appellant applied some of the things she learned in parenting class. (Tr. 104-105). However, she also testified regarding two incidents where appellant lost her temper while at the visitation center. (Tr. 107-109). Finally, she opined that it was not in the children's best interests to never see appellant again. (Tr. 124).
 {¶ 40} Following Ms. Morrocco was Trina Krucz, a sexual abuse investigator with appellee. Ms. Krucz testified that she interviewed Randy on September 25, 2002. (Tr. 126). According to Ms. Krucz, she asked him about his foster home and appellant, when Randy told her that he liked appellant but did not like Dale, who lived with appellant. (Tr. 127). Randy then told Ms. Krucz that Dale touched him. (Tr. 128). She asked him where and Randy pointed to his penis and his butt. (Tr. 128). Randy told her that it happened "whole bunches of times." (Tr. 129). He told her that he told appellant about what Dale had done and appellant told Dale, "Don't touch it." (Tr. 129). Ms. Krucz believed Randy's allegations and stated that he gave her no reason to think that someone could have coached him to say this. (Tr. 130). She testified that if a parent does not believe abuse allegations by a child, they would not be capable of protecting that child from future abuse. (Tr. 132-33).
 {¶ 41} Ms. Krucz explained that, upon Randy's allegations, she contacted Dale. (Tr. 130). She stated that he began yelling and was unwilling to discuss the allegations. (Tr. 131). Ms. Krucz also testified that she attempted to persuade Dale to have a CVSA (computer voice stress analysis) or a polygraph. (Tr. 131-32). Dale refused on the advice of his attorney. (Tr. 131-32). Ms. Krucz also testified that criminal charges have not been brought against Dale. (Tr. 134-35).
 {¶ 42} Next, Ms. Booth, the caseworker, testified. She stated that appellant met some of her initial case plan goals, including completing a parenting class and attending counseling. (Tr. 143-46). However, after Randy's allegations of abuse against Dale, appellant's case plan was amended to include that appellant protect her children and increase her sensitivity about Randy's abuse. (Tr. 147-48). Ms. Booth testified that appellant has not met this goal because she is unwilling to believe her son's allegations. (Tr. 148). Furthermore, Ms. Booth opined that the fact that appellant married Dale soon after Randy made his allegation showed that she believed Dale over her own child. (Tr. 148). She stated that when appellee told appellant about Randy's allegations, appellant became angry and said that it was a lie. (Tr. 156).
 {¶ 43} Additionally, Ms. Booth testified regarding appellant's behavior. She stated that since January 2003, appellant has refused to talk with her about the case plan. (Tr. 150-51). Ms. Booth also testified that appellant withheld the nature of her relationship with Dale from her until appellant married Dale. (Tr. 151). When Ms. Booth questioned appellant about why Dale was at her house, appellant explained that he was the landlord and he was there doing repairs. (Tr. 151).
 {¶ 44} Finally, Ms. Booth opined that it was in the children's best interests that the court grant appellee permanent custody. (Tr. 160).
 {¶ 45} Lastly, appellant testified. She stated that she has attended all visits with the children, completed parenting class, takes all of her medications, and attends counseling regularly. (Tr. 205-207). Regarding Randy's allegations, she testified that Dale was never alone with Randy. (Tr. 210, 213). Accordingly, that was why she did not believe Randy's allegations. (Tr. 213). Appellant also testified that she loves her children and wants to be reunited with them. (Tr. 215).
 {¶ 46} We should also note that we have considered Randy's in-chamber interview with the court.
 {¶ 47} Given the above testimony, we cannot conclude that the trial court abused its discretion in granting appellee's motion for permanent custody. Appellant professed her love for her children and has consistently visited with them. However, several factors weigh heavily in support of the trial court's decision. Appellant refused to believe her son's allegations of abuse against her husband. If appellant does not believe her son, she will not be able to protect him from potential abuse. Furthermore, she has had other children removed from her custody due to similar allegations. Thus, appellant has not been able to provide a safe home for her other children either. Additionally, appellant concealed her relationship with Dale until she married him, which she did shortly after Randy came forward with the abuse allegations. The timing of her marriage indicates that she failed to make her child her first priority. Furthermore, the GAL and the family's caseworker both opined that it was in the children's best interests for the court to grant permanent custody to appellee. Hence, the court had competent, credible evidence before it that granting permanent custody to appellee was in the children's best interests. Thus, appellant's second assignment of error is without merit.
 {¶ 48} For the reasons stated above, the trial court's decision is hereby affirmed.
Vukovich, J., concurs.
DeGenaro, J., concurs.